BALL and another vs. BOWE, Garnishee.

*May 11 — May 27, 1880.*

ASSIGNMENT FOR BENEFIT OF CREDITORS. *(1) When defective affidavit a good oath. (2) Proof of insolvency. (3–5) Verified list of creditors: preferences: how far preference evidence of fraud.*

1. The statutory requirement that the value of the property included in a general assignment for the benefit of creditors shall be ascertained by the *oath* of the assignor and one witness, is *held* satisfied by an affidavit sworn to and signed by the assignor and one *H. E. Blackburn*, although in the body of the affidavit said assignor and *H. E. Elmer* are named as the affiants; and testimony of the notary before whom such oath was taken is admissible (but perhaps not essential) to show by whom such oath was made.

2. The verified inventory of the assignor's assets and of the amount due each creditor, filed with the clerk of the circuit court pursuant to sec. 1697, R. S., is at least *prima facie* evidence of the insolvency. But whether proof of insolvency is necessary, to sustain the assignee's right to the property against a creditor, is not here considered.

3. The verified list of creditors filed with the clerk of the circuit court is not required to distinguish preferred creditors; and where the assignment divided the creditors into three classes, to the two first of which preferences were given, and a schedule attached named the creditors of the first and second classes respectively, the fact that in such verified list the classification of the schedule is preserved, but an additional name inserted among the creditors of the first class, does not invalidate the assignment or affect the rights of such creditor.

4. It is settled in this state that a general assignment is not avoided by preferences given to creditors therein.

5. The fact that creditors who have for their claims (as material men) a specific lien upon the homestead (which is not included in the assignment), are among those to whom preference is given, though it may go to the jury as evidence bearing upon the question of a fraudulent intent, is not conclusive of fraud.

APPEAL from the County Court of *Fond du Lac* County.

Blackburn made a voluntary assignment of all his property, not exempt from execution, to *Bowe*, who took possession of the same. The assignment was in trust for the benefit of the creditors of the assignor, and was made in attempted compliance with the provisions of the statute, R. S., 497, ch. 80. The nominal value of the assigned property was considerably less than the debts of the assignor, as scheduled by him under oath. The assignment specifies three classes of creditors, those of the first and second classes being named in schedules annexed to the assignment. Preference in payment is given to creditors named in the first class over all other creditors, and to those in the second class over those in the third. The third-class creditors are not named. The plaintiffs commenced an action against the assignor, and summoned the assignee as a garnishee. Issue was joined upon his answer, and a trial of such issue resulted in judgment for the garnishee, sustaining the assignment, and dismissing the action. The case is further stated in the opinion. The plaintiffs appealed from the judgment.

The cause was submitted on the brief of *Shepard & Shepard* for the appellants, and that of *Carter & Thomas* and *Giffin & Williams* for the respondent.

LYON, J. The objections to the validity of the assignment will be considered in their order.

1. Annexed to the assignment is an affidavit of the nominal value of the assets therein assigned, signed by the assignor and one H. E. Blackburn. In the body of the affidavit the assignor and *H. E. Elmer* are named as the affiants. The no-

Ball and another vs. Bowe, Garnishee.

tary who signed the *jurat* testified (under objection) that H. E. Blackburn, who signed the affidavit, was sworn by him to its contents.   It is claimed that the affidavit is insufficient because of such misnomer.   Whatever might be the effect of the misnomer in the body of the affidavit, were an affidavit of value required, we cannot doubt that the value of the assigned property was ascertained by the *oath* of the assignor and one witness, which is all the statute requires.   R. S., 497, sec. 1694. As was said in *Burns v. Doyle*, 28 Wis., 460, in which case a defective affidavit was held to be a valid oath, " the affidavit includes the oath, and may show what facts the affiant swore to, and thus be available as an *oath*, although it may be entirely unavailable as an *affidavit.*"   Page 463.   We also think that the testimony of the notary was admissible (but perhaps not essential) to show by whom the oath was made.

2. If proof of the insolvency of the assignor was required (a point not here decided), that sufficiently appears by reference to the verified inventory of his assets and list of his creditors, and the amount due each creditor, filed with the clerk of the circuit court pursuant to section 1697.   These show that his indebtedness considerably exceeded the nominal value of his assets, and the fact is at least *prima facie* evidence of insolvency.

3. The verified list of creditors so filed with the clerk preserved the classification made in the assignment schedules; and the name of a creditor, and the sum due him, not in the schedule annexed to the assignment, is found in the list with the names of the first-class creditors.   It is insisted that this is an attempt to extend the preference of the assignment *ex post facto* to an unpreferred creditor, and vitiates the assignment. The conclusive answer to this proposition is, that the statute makes no provision that the list shall specify who are preferred creditors and who are not.   It simply calls for a general list of the creditors and the amounts due each; and the mere fact that the list unnecessarily preserves the classification of the as-

signment, and includes an additional creditor in the first class is of no significance. A person desiring to investigate the affairs of the assignor goes to the verified inventory and list on file with the clerk to ascertain the nominal value of the assets of the assignor applicable to the payment of his debts, the names of his creditors, and the amount of their respective demands. But he goes to the assignment (a copy of which is on file in the same office) to ascertain the order in which the creditors are to be paid. The unscheduled creditor whose name is added to the list, gains no advantage by the circumstance that he is named therein with first-class creditors. His claim stands where the assignment placed it — that is, in the third class.

4. It is further argued that the assignment is fraudulent and void because certain creditors are preferred therein, to whom the assignor had become indebted for materials, etc., used by him in his homestead, which was not assigned, and for which debts his homestead was liable to be charged under the lien laws. The fact of these preferences may be a badge of fraud, or evidence tending to show a fraudulent intent, but is not conclusive evidence of fraud. The circuit court in its findings negatived any such fraudulent intent, and the evidence preserved in the bill of exceptions is not sufficient to justify this court in setting aside or reversing that finding.

5. Lastly, the learned counsel for the plaintiffs argue, with great force and ability, that preferences in an assignment like this render the assignment void; and they have favored us with a review of the leading cases on the subject. They contend that it is doubtful whether the common law tolerates such assignments, and that the cases which uphold them rest upon mere *obiter;* and, further, that the principles of equity and the policy of the law are against allowing insolvent assignors to devote all their assets to the payment of a chosen few of their creditors to the exclusion of the others.

Were the question one of first impression, the argument might greatly influence our judgment. But it is not a new

question.   An assignment like this, with preferences, was up-held in *Kneeland v. Cowles*, 3 Pin., 316, decided in 1851, and since that time many assignments of this character have passed the scrutiny of this court and been upheld, without challenge by bar or bench because they contain preferences.   Whatever may have been the origin of the doctrine which sustains them, it is now too firmly fixed in our jurisprudence to be overruled and discarded by other than legislative authority.

We conclude that none of the objections to the validity of the assignment are well taken, and, hence, that the assets as-signed cannot be reached by the creditors of the assignor, by garnishment.

*By the Court.*— Judgment affirmed.