## Lindsay and another vs. Guy, Garnishee, etc.

*February 21 — March 13, 1883.*

VOLUNTARY ASSIGNMENT: PARTNERSHIP: EVIDENCE. *(1) Assignment construed. (2) Payment pro rata need not be directed. (3) Sureties on bond: certificate of officer. (4, 5) Evidence of partnership between assignor and preferred creditor.*

1 An assignment which provides for the payment of the claims of certain preferred creditors in full, and then provides that after the payment of all the expenses attending the execution of the trust thereby created and the payment and discharge in full of the lawful debts owing by the assignor of any and every kind and description if any of the proceeds of the sales and collections by the assignee shall remain in his hands, such remainder shall be returned to the assignor, clearly shows that there was no intention on the part of the assignor to exclude his creditors who were not preferred from a participation in the proceeds of the assigned property.

2. An assignment is not void in law because it does not direct that the creditors shall be paid *pro rata* in case there be not enough of the proceeds of the assigned property to pay them in full. Unless otherwise directed by the express terms of the assignment, the law imposes that duty upon the assignee.

3. If the officer to whom the bond of an assignee is delivered receive such bond and cause the same to be filed with the assignment as required by law, it will be presumed that he was satisfied that the property of the sureties within this state was worth in the aggregate the sum specified in the bond, although he did not certify to such fact. If it does not appear that the sureties in the bond were insufficient the assignment is not void for want of such certificate; and if such certificate ought to be indorsed upon the bond it may be so indorsed after the bond is filed, in order to uphold the assignment.

4. Where an assignment is attacked on the ground that it fraudulently prefers the claim of one who is alleged to have been a partner of the assignor for services rendered to the firm, and it appears that the existence of the alleged partnership was never made known to any one, that no debts were ever contracted on its credit, and that all persons dealing with the alleged firm (including the creditor attacking the assignment) gave credit to the assignor alone in complete ignorance of the existence of any partnership, the assignment will not be disturbed unless there is clear proof of the existence of such partnership.

5. The evidence in this case (including the fact that the sign upon the store and the name in which the business of the alleged firm was done was "S. & Co.," and an entry in the books of S. reciting the formation of a partnership, made by his alleged partner without the knowledge or consent of S.) is *held* insufficient, as against S., to sustain a finding that a partnership existed.

APPEAL from the Circuit Court for *St. Croix* County.

The facts are stated in the opinion. The entry in the books therein referred to, made by Stephens, was as follows: "NEW RICHMOND, Feb. 23, 1880. Peter Scherer and Wm. M. Stephens have entered into copartnership under the style and firm of Peter Scherer & Co., in the prosecution of general merchandising." The explanation given by Scherer of his adoption of the style of "Scherer & Co." was, in substance, that having another separate and independent busi-

ness in the same city, he carried on one in that name for the purpose of keeping the two distinct and avoiding confusion in the accounts and shipments of merchandise pertaining to each.

The circuit court held that the assignment was fraudulent and void as to creditors, and rendered judgment against the garnishee directing him to satisfy the claim of the plaintiffs out of the proceeds of the property assigned to and disposed of by him. From such judgment the garnishee appealed.

For the appellant there were briefs by *John C. Spooner*, *N. H. Clapp*, and *Frank P. Chapman*, as attorneys, and *I. C. Sloan*, of counsel, and the cause was argued orally by *Mr. Spooner* and *Mr. Sloan*. They argued, *inter alia*, that to find a partnership in this case the evidence must go beyond that required in cases where the action is directly against the alleged partnership, and be sufficient to establish a partnership in an action between the partners themselves. *Allen v. Dunn*, 15 Me., 292; *In re Murray*, 13 Fed. Rep., 550; *Bond v. Nave*, 62 Ind., 506. The entry in the books, standing alone, is not sufficient. It is not every joint agreement wherein men call themselves "partners" that constitutes a partnership. *Flanagin v. Champion*, 2 N. J. Eq., 54; *Gregory v. Martin*, 78 Ill., 38; *Stoallings v. Baker*, 15 Mo., 481; *Bowman v. Bailey*, 10 Vt., 170; *Fawcett v. Osborn*, 32 Ill., 411; *Oliver v. Gray*, 4 Ark., 425; *Nicholaus v. Thielges*, 50 Wis., 491. Such entry is not competent evidence against Scherer. The acts and declarations of one person are never admissible in evidence to prove a partnership between him and another, unless brought to the notice of such other and either actually or constructively adopted by him. *Berry v. Lathrop*, 24 Ark., 12; *Campbell v. Hastings*, 29 id., 512; *Cross v. Langley*, 50 Ala., 8; *Scott v. Dansby*, 12 id., 714; *Gordon v. Bankard*, 37 Ill., 147; *Hahn v. St. Clair Savings & Ins. Co.*, 50 id., 456; *Smith v. Hulett*, 65 id., 495; *Gregory v. Martin*, 78 id., 38; *Hudson v.*

Lindsay and another vs. Guy, Garnishee, etc.

*Simon*, 6 Cal., 453; *Whitney v. Ferris*, 10 Johns., 66; *Harris v. Wilson*, 7 Wend., 57; *McPherson v. Rathbone*, id., 216; *Kirby v. Hewitt*, 26 Barb., 607; *Pierce v. McConnell*, 7 Blackf., 170; *Flanagin v. Champion*, 2 N. J. Eq., 51; *Uhler v. Browning*, 28 N. J. L., 79; *Tuttle v. Cooper*, 5 Pick., 414; *Robbins v. Willard*, 6 id., 464; *Robins v. Warde*, 111 Mass., 244; *Dutton v. Woodman*, 9 Cush., 255; *Allcott v. Strong*, id., 323; *Converse v. Shambaugh*, 4 Neb., 376; *Grafton Bank v. Moore*, 13 N. H., 99; *Johnson v. Gallivan*, 52 id., 143; *Cook v. Penrhyn Slate Co.*, 36 Ohio St., 135; *Lenhart v. Allen*, 32 Pa. St., 312; *Nelson v. Lloyd*, 9 Watts, 22; *Wolle v. Brown*, 4 Whart., 365; *White v. Gibson*, 11 Ired. L., 283; *Henry v. Willard*, 73 N. C., 35; *Corps v. Robinson*, 2 Wash. C. C., 388; *Pleasants v. Fants*, 22 Wall., 116; *Jennings v. Estes*, 4 Shepley (Me.), 323; *Prentiss v. Kelley*, 41 Me., 436; *Van Reimsdyk v. Kane*, 1 Gall., 635; *Johnston v. Clements*, 25 Kan., 376; *Wiggins v. Leonard*, 9 Iowa, 194; *Gay v. Fretwell*, 9 Wis., 186; Collyer on Part. (6th ed.), 1040; Whart. on Ev., sec. 1200, and note 9.

For the respondents there was a brief by *Chapin, Dey & Friend*, and oral argument by *Mr. Dey*. They argued, among other things, that where there is no written agreement, the evidence relied on to prove a partnership between persons, is their conduct, the mode in which they have dealt with each other, and all the circumstances available; and this rule extends even as between the parties themselves. 1 Lindley on Part. (4th ed.), 92; *Schoeffler v. Schwarting*, 17 Wis., 320; *Manning v. Gasharie*, 27 Ind., 399; *Dalton v. Dalton Manuf'g Co.*, 33 Ga., 243; *Duryea v. Whitcomb*, 31 Vt., 395; *Kelleher v. Tisdale*, 23 Ill., 405; *Wills v. Simmonds*, 51 How. Pr., 48; *Frick v. Barbour*, 64 Pa. St., 120; 2 Colly. on Part. (6th ed.), sec. 700; 2 Greenl. on Ev., sec. 483; 2 Whart. on Ev., sec. 1132; *Carlyle v. Plumer*, 11 Wis., 96. An unsigned partnership agreement between the parties in the handwriting of one of them is competent, and with other

evidence, such as acts, declarations, etc., makes a strong case. *Dickinson v. Robbins*, 12 Pick., 74; 1 Lindley on Part., 92, 97. And such entries in the books of the partnership are as conclusive of the rights of the partners as if prescribed in a regular contract. *Stewart v. Forbes*, 1 McN. & G., 137–147; *S. C.*, 1 Hall & Tw., 461. Sufficient evidence being adduced to raise a presumption of partnership, then the acts of each of the persons are admissible against the other to strengthen the case already established. *Nicholls v. Dowding*, 1 Stark., 81. Partnership books, as a rule, are evidence against every partner, because every partner is entitled not only to see them, but, in conjunction with his copartners, to determine what shall be inserted and what not. *U. S. Bank v. Binney*, 5 Mason, 188; *Simms v. Kirtley*, 1 Mon. (Ky.), 80; *Caldwell v. Leiber*, 7 Paige, 507; *Fletcher v. Pollard*, 2 Hen. & Munf., 544. The assignment was void on its face because the bond nowhere shows that the officer taking it was satisfied that the property of the sureties, in the state, was worth the sum specified, as required by sec. 1694, R. S. Such satisfaction must appear of record in some way; otherwise this court would not have passed upon the *sufficiency* of an indorsement of satisfaction, as in *Hutchinson v. Brown*, 33 Wis., 465. In what form the satisfaction must appear, and whether it can be shown afterwards, were determined by this court, under the attachment law (R. S. 1839, p. 165, tit. III, sec. 1), in *Mayhew v. Dudley*, 1 Pin., 95; *Morrison v. Fake*, id., 133; and *Slaughter v. Bevans*, id., 348.

On behalf of the creditors of Scherer there was a brief by *H. C. Baker* and *J. W. Bashford*, as attorneys, and *Tenney, Bashford & Tenney*, of counsel, and oral argument by *Mr. R. M. Bashford*. They contended, *inter alia*, that the sole object of the clause in the assignment which provides that after the payment of all costs, etc., and the payment and discharge in full of the lawful debts owing by the assignor, if

anything remains it shall be reconveyed, etc., was to pro-
vide for a reassignment, and it creates no trust for any other
purpose. If the provision in respect to the payment of debts
should be considered as authorizing the assignee to pay
other creditors than those previously named and preferred,
it is then left entirely discretionary with him which of such
creditors he shall pay, or in what proportion. In a word, if
the assignee is by that clause empowered to make any pay-
ment to creditors, he is authorized to give preferences.
Preferences are now regarded with great disfavor by all
courts, and have been prohibited in many states. Burrill
on Assignments, secs. 163–166. And the courts which have
upheld preferences are unanimous in holding that the debtor
must declare such preferences in the assignment at the time
of executing it, and that he cannot reserve to himself or to
his assignee the right to declare further preferences or to
give preferences at his discretion. *Barney v. Griffin*, 2
Coms., 370; *Grover v. Wakeman*, 11 Wend., 203; *Goddard v.
Hapgood*, 25 Vt., 351; *Goodrich v. Downs*, 6 Hill, 438;
*Boardman v. Halliday*, 10 Paige, 228; *Sheldon v. Dodge*,
4 Denio, 217; *Mitchell v. Stiles*, 13 Pa. St., 306; *Gazzam v.
Poyntz*, 4 Ala., 374; *Averill v. Loucks*, 6 Barb., 475; *Ker-
cheis v. Schloss*, 49 How. Pr., 287. If the instrument makes
no provision for the general creditors, but does stipulate for
a reconveyance of the property to the assignor on payment
of the preferred claims, it is fraudulent and void. *Mackie v.
Carns*, 5 Cow., 547; *Hyslop v. Clarke*, 14 Johns., 458; *Seaving
v. Brinkerhoff*, 5 Johns. Ch., 329; *Austin v. Bell*, 20 Johns.,
442. If the assignee could justify as against any one of the
general creditors either in preferring another one of this
class or in reconveying the property to the assignor without
paying any but the preferred claims, the law will import
those obnoxious provisions into this instrument and pro-
nounce it void. *Hutchinson v. Lord*, 1 Wis., 315; *Barnum
v. Hempstead*, 7 Paige, 568. As to form of assignment, see

Burrill on Assignments, sec. 152. An assignment which is void or fraudulent on its face cannot be cured by the operation of the assignment laws. Burrill on Assignments, 516, and cases cited.

TAYLOR, J. This is an appeal by the garnishee, *Guy*, in an action against him as such garnishee. The original action was between the respondents as plaintiffs and Peter Scherer as defendant. *Guy*, the garnishee, by his answer shows that he is the general assignee of Scherer, holding the property of said Scherer by virtue of an assignment made by him for the benefit of his creditors. And he also shows by his answer that two other creditors of said Scherer had attached the goods assigned to him by said Scherer upon two attachments issued in two separate actions brought by creditors of Scherer against him. The respondents claim — *First*, that the assignment by Scherer to *Guy*, the appellant, is void upon its face; and, *second*, that if not void upon its face it is void for actual fraud on the part of Scherer in making the same. It is said by the learned counsel for the respondents that the assignment is void on its face because it prefers certain creditors of Scherer, and directs the payment of their claims in the first instance out of the proceeds of the property assigned, and makes no provision for the payment of the other creditors of Scherer, but directs the assignee, after the payment of such preferred creditors, to return the residue of the assigned property, if there be any, to the assignor. We do not think that is the true construction of the assignment. The assignment first provides in apt terms for the payment of the claims of certain preferred creditors in full, and then proceeds as follows: "Lastly, after the payment of all the costs and charges and expenses attending the execution of the trust hereby created, *and the* payment and discharge in full of the lawful debts owing by the said party of the first part of any and every kind and description, if any portion of the

proceeds of said sales and collections shall remain in the hands or control of the party of the second part," etc., then such proceeds so remaining in his hands shall be returned to the assignor. We think this language very clearly shows that there was no intention on the part of the assignor to exclude his creditors not named as preferred creditors from a participation in the proceeds of the assigned property, if any should remain in the hands of the assignee after the payment of those preferred. Any other construction would be against the clear meaning of the language used.

It is said that because the assignment does not direct that the creditors shall be paid *pro rata* in case there be not enough of the proceeds of the assigned property to pay them in full, it is void in law. We think not. If there be not enough to pay in full the creditors, either preferred or general, the law imposes the duty upon the assignee to pay them *pro rata*, unless otherwise directed by the express terms of the assignment. The assignment having divided the creditors into two classes and preferred the first class, that class is to be first paid in full if there be sufficient proceeds for that purpose, and if not, to pay that class *pro rata*, and if there be any funds left after the payment of this class in full, then the other creditors are to be paid *pro rata* if there be a lack of funds to pay them in full.

It is urged that the assignment is void in law because the officer to whom the bond of the assignee was delivered, did not, at the time it was delivered to him, certify that he was satisfied that the property of the sureties, being within this state, was worth in the aggregate the sum specified in said bond. See sec. 1694, R. S. 1878. The statute does not in terms require any such certificate to be made by the officer, and, having received the bond and caused the same to be filed with the assignment as required by law, we must presume that the officer was satisfied of that fact. *Churchill v. Whipple*, 41 Wis., 611; *Klauber v. Charlton*, 45 Wis., 603;

*Ball v. Bowe,* 49 Wis., 495; *Fuller v. Hasbrouck,* 46 Mich., 78. It not appearing in this case that the sureties to the bond were insufficient, we think the assignment was not void for the want of the certificate of the officer, and if the certificate of the officer that he was satisfied as stated in the statute ought to be indorsed upon the bond, the defect might be cured by such indorsement after the bond had been filed, in order to uphold the assignment. We hold that upon its face the assignment was not void in law on account of any informality in the same or in the bond of the assignee.

The learned counsel for the respondents have made a very able argument upon the question whether the assignment was void for fraud in fact on the part of the assignor. The whole strength of this argument is based upon the allegation that, at and before the time of the assignment by Scherer, he was a partner in business with one William Stephens, and that by the assignment he has ignored said partnership and preferred said Stephens for pretended claims against the assignor, which claims could not be sustained as claims against Scherer, if such partnership did in fact exist. A large portion of the preferred claims of Stephens is for services performed by him in and about the business of the alleged partnership.

There is no question made that Scherer has not transferred to his assignee all the property owned by him which is not exempt from execution, nor that said assignee has not, by virtue of his assignment, taken possession of all the property belonging to the alleged partnership. The creditors of Scherer cannot be prejudiced by this assignment, by any possible claim on the part of Stephens that such assignment by one partner of the partnership assets for the benefit of creditors could not bind the other partner, nor the creditors of the partnership; for the reason that if Stephens accepts his position as an individual creditor of Scherer, under the assignment, he will be estopped from hereafter alleging that

the assigned assets were the assets of the supposed firm of Scherer & Stephens; and, further, this record shows that all the debts contracted by this supposed firm were contracted on the individual credit of Scherer, and some of such claims have been prosecuted to judgment against said Scherer alone. It is quite improbable, therefore, that there should be any party who could hereafter successfully call in question the right of Scherer to make the assignment of the supposed partnership assets, if there were in fact any such partnership.

But it is said that if Scherer and Stephens were in fact partners, then, although there are no persons who now stand in a position to be preferred in the payment of their debts out of the partnership assets, yet the fact that the assignor has recognized Stephens's claim for services while a partner as a debt against him individually, and has preferred such claim in the payment of his debts by the assignee, is conclusive evidence of a fraudulent intent on the part of Scherer in making the assignment, and that such fraudulent intent renders the assignment void as to all parties. It will be seen that this question of partnership or no partnership is not directly in question in this case. This is not a proceeding on the part of a creditor of the supposed firm to collect his debt out of the assets of the partnership, but is a proceeding on the part of a creditor of Scherer alone to subject his property, now in the hands of his assignee for the benefit of all his creditors, to the payment of his individual debt. And this question of partnership is brought in collaterally, and upon the fact of its existence it is sought to base a charge of fraud against Scherer in making his assignment. Previous to the date of the assignment in question there was apparently no one who knew of the alleged partnership, and, so far as appears from this record, no debts were contracted on behalf of such partnership; all persons who dealt with what is now alleged to be a partnership, dealt with Scherer as the firm, and with him alone. The firm never

had any credit, never contracted any debts, and, so far as appears from the record, no debts were contracted upon the supposition that such firm ever had any existence.

Under these circumstances, if the respondents now seek to avoid this assignment based upon the fact that such firm did in fact exist, and upon the fraudulent preference of a claim for the services of one of the members of the firm, who, during its alleged existence, acted as its principal clerk and manager, they should, we think, be held to clear proof of the existence thereof, and no inference or presumption should be made in favor of the fact of a partnership. The existence of such firm was not made known to any one, no debts were ever contracted upon its credit, and if it is to be used now to destroy an assignment made for the benefit of the creditors of the person who has made himself individually liable for all debts contracted for the benefit of such supposed partnership by one who now alleges that he sold goods to said firm, but without knowledge of its existence, and gave credit alone to Scherer for the goods so sold, he ought to make a very clear case before calling upon a court to set aside an assignment made by the person to whom all persons dealing with the supposed firm gave credit in complete ignorance of its existence. After a careful examination of all the evidence found in the record we think the finding of the learned circuit judge, that there was an existing partnership between said Scherer and Stephens at and before the date of the assignment, is not sustained by the evidence. Both Scherer and Stephens swear positively that no partnership existed between them; and there are but two things connected with their transactions which tended to prove such partnership: *First*, the entries made by Stephens in the books kept by him for Scherer; and, *second*, the fact that the sign upon the store where the business was done, and the name in which it was done, was "Scherer & Co." Scherer explains why he adopted the style of "Sche-

rer & Co." in carrying on this business, and there is certainly nothing improbable in his reasons given for using that name.    All the facts previous to the assignment tend strongly to corroborate his statement that the " & Co." was not intended to represent any partner in the business.    All the evidence shows that those dealing with "Scherer & Co.," and who sold goods to " Scherer & Co.," supposed they were selling to Scherer alone, and either took his individual notes for the goods so sold or gave credit to him alone.    The fact of the use of the style " Scherer & Co." has misled no one; and, so far as we can see from this record, all persons treating with Scherer & Co. supposed it meant Scherer alone, and not Scherer and some one as his partner.

We think the evidence of the use of the name is fully and clearly explained, and has misled no one to his prejudice, and should therefore have no weight in proving the existence of a partnership.    But it is said that the entries in the books of Scherer by Stephens clearly establish the partnership. Upon this point Scherer testifies positively that he never saw such entries or heard that such entries had been made in his books until about a week before the trial.    Stephens does not contradict him in this respect, and testifies himself that he had no authority to make any entry in the books indicating that he was a partner in the business.    The entry relied on was not signed by either of the parties, but was in the handwriting of Stephens.    The fact that the entry relied on was not signed by either party is corroborative of the testimony of Scherer that he did not authorize it to be made or know of its existence.    Had there been an agreement in fact that they should be partners in the business, it is quite probable that such entry would have been signed by both parties, or that it would have been signed by the party who did not make the same in his own handwriting.    If the entry was made without the knowledge or assent of Scherer, it is unnecessary to cite authorities that such unauthorized entry by Stephens

would not be proof of partnership which would have the slightest effect upon Scherer so far as he was concerned. It might tend to prove, as against Stephens, that he was a partner of Scherer, but it would not have the slightest tendency as against Scherer to prove him a partner of Stephens. The long list of authorities cited by the learned counsel for the appellant is conclusive upon this point.

We think the evidence fails to show that Scherer and Stephens were partners in business during the time the business was carried on in the name of "Scherer & Co.," and consequently there is no evidence to establish any fraud in the claim of Stephens against Scherer for the amount of which he is a preferred creditor. There is nothing in the evidence which shows that there was any intent on the part of Scherer to defraud his creditors by making the assignment of his property to *Guy*, the appellant in this case; and for that reason the garnishee should have had judgment in his favor in the court below.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to the circuit court to enter judgment in favor of the garnishee.